UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ROBERT L. MORRISON,

      Petitioner,

v.

Warden DUKE TERRELL,

      Respondent.

Civil No. 08-665 (ADM/JJG)

**REPORT AND RECOMMENDATION**

      Robert L. Morrison, Salvation Army Comprehensive Sanctions Center, 105 South Ashland Avenue, Chicago, Illinois, 60607, Petitioner, pro se.

      William J. Otteson, Assistant United States Attorney, Suite 600, United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota, 55415, for Respondent.

JEANNE J. GRAHAM, United States Magistrate Judge

      This matter is before the undersigned Magistrate Judge of the District Court on the petition of federal prisoner Robert L. Morrison for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241.  He claims that he has been wrongly deprived of 67 days of good conduct time credit, and that the Bureau of Prisons, ("BOP"), is therefore intending to keep him in federal custody beyond his proper release date. Respondent has opposed the petition, and both sides have briefed the issues presented in this case.

The matter has been referred to this Court for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons discussed below, the Court concludes that Petitioner's habeas corpus petition should be DISMISSED WITH PREJUDICE.

**I.  BACKGROUND**

The elemental facts of this case are not in dispute.  Petitioner is serving a 160-month federal prison sentence, which was imposed in the Western District of Texas in October 2000.  He was serving his sentence at the Federal Prison Camp in Three Rivers, Texas, ("FPC-Three Rivers"), when the events giving rise to this action occurred.  However, he was later transferred to the Federal Medical Center in Rochester, Minnesota, ("FMC-Rochester"), and he was confined there when he filed this action.  Petitioner was recently transferred to a "half-way house" in Chicago, Illinois, and it appears that he will serve the remainder of his prison sentence at that facility.[1]

---

[1]  Although Petitioner is no longer incarcerated in the District of Minnesota, his current habeas corpus petition can still be properly adjudicated here, because he was confined in this District when the petition was filed.  See McCoy v. United States Board of Parole, 537 F.2d 962, 966 (8th Cir. 1976) (the federal court for the district where a prisoner was incarcerated when he filed his habeas corpus petition does not lose jurisdiction when the prisoner is transferred to another district while his petition is still pending); see also Wright v. Lacy, 664 F.Supp. 1270, 1271, n.1 (D.Minn. 1987) ("[i]t is well established that jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change").

Petitioner contends that his transfer to a half-way house should not cause his current claims for relief to become moot, because if his claims were to be vindicated, and if his lost good conduct time credits were to be restored, his release from the half-way house would

On or about September 26, 2006, a member of the prison staff at FPC-Three Rivers opened and reviewed a letter that Petitioner had written to a woman named "Tanitra." (A copy of the letter is attached to the Declaration of Angela Buege, [hereafter "Buege Decl."], [Docket No. 4-2], Attachment C.[2]) That letter included the following statement:

> "I can't wait until I can talk to you face to face so that we can have another deep and personal conversation. I hope you didn't forget what I said about getting those little blue pills (Viagra), and I hope you got at least 1 before you come to see me the next time so that you can bring it with you and give it to me in the visiting room; that way the next time you come 'EARLY', I'll have taken it 30 minutes before you've made it to the 'SPOT', and I can take all your frustrations away!! (SMILE)."

(Id.) The letter also indicated that Tanitra "should be getting a $40 money order in the mail," that she should try to buy some shoes for Petitioner, and that she should acquire 20 packs of cigarettes.

After Petitioner's letter to Tanitra was reviewed, an "Incident Report" was

---

be expedited. (See Letter from Petitioner dated December 18, 2008, [Docket No. 7].) Respondent has not contested this assertion, and it appears to be reasonable. Thus, at least for now, the Court accepts Petitioner's contention that his case has not become moot.

[2] The Declaration of Angela Buege, with attachments, was originally filed as Docket No. 4-2. When that Declaration was originally docketed, however, the final page was inadvertently omitted. Therefore, the complete Declaration, (but without attachments), was subsequently re-filed as Docket No. 8.

prepared. (Buege Decl., Attachment B.) The Incident Report accused Petitioner of violating prison rules by "Attempting to introduce narcotics not prescribed to the individual by medical staff (111a)." (Id.) The reference to "111a" in Petitioner's Incident Report identifies the prison rule that Petitioner was accused of violating – namely 28 C.F.R. § 541.13, Table 3, Code 111.

Table 3 (of 28 C.F.R. § 541.13) describes various "prohibited acts" that can cause federal prisoners to be subject to various disciplinary sanctions. The prohibited act described at Code 111 of Table 3 is "Introduction of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff." Petitioner's Incident Report included the letter "A" as part of the reference to Code 111, (i.e., "111a"), to signify that Petitioner was accused of attempting to violate Code 111. 28 C.F.R. § 541.13(b) explains that –

> "Aiding another person to commit any of these offenses, attempting to commit any of these offenses, and making plans to commit any of these offenses, in all categories of severity, shall be considered the same as a commission of the offense itself. In these cases, the letter "A" is combined with the offense code. For example, planning an escape would be considered as Escape and coded 102A. Likewise, attempting the adulteration of any food or drink would be coded 209A."

Petitioner was given a copy of his Incident Report on September 28, 2006. (Buege Decl., p. 2, ¶ 6.) The Incident Report was initially referred to a Unit Disciplinary Committee, ("UDC"), which conducted a preliminary review of the matter on October 3, 2006. (Id., p. 3, ¶s 6-8.) Because the Incident Report involved an

4

alleged prohibited act in the "greatest" security level category,[3] the UDC referred the matter to a Disciplinary Hearing Officer, ("DHO"), for a hearing.  See 28 C.F.R. 541.15 ("[t]he UDC must refer all greatest category charges to the DHO").

Prior to the DHO hearing, Petitioner was given two documents – (1) a document entitled "Inmate Rights At Disciplinary Hearing," which described his procedural rights in connection with the DHO hearing, and (2) a document entitled "Notice of Discipline Hearing Before The (DHO)," which notified Petitioner (again) of the charges against him. (Buege Decl., p. 3, ¶ 9, Attachment D.)  The latter document reiterated the charge previously stated in the Incident Report, i.e., that Petitioner was charged with a Code 111A violation for allegedly "Attempting to introduce narcotics not prescribed to the institution [sic] by medical staff."

The DHO hearing on the charge against Petitioner was held on October 10, 2006.  Petitioner appeared at the hearing, acknowledged that he had written the letter to Tanitra, and informed the DHO that the reference to Viagra was "a joke." The DHO rejected Petitioner's contention that he was joking when he asked Tanitra to provide him with Viagra.  The DHO found that Petitioner's letter made it "very explicit" that he wanted Tanitra to bring one Viagra pill and give it to him in the visiting room.  Moreover, the DHO found there was "no indication in this letter" that

---

[3] 28 C.F.R. § 541.13(a) establishes four categories of prohibited acts – (1) "greatest," (2) "high," (3) "moderate," and (4) "low moderate."  Prohibited acts identified by Codes 100-199 are in the "greatest" category.  28 C.F.R. § 541.13, Table 3.  Thus, the alleged Code violation in Petitioner's case – Code 111A – is within the "greatest" category.

Petitioner "was joking," or that he did not actually expect Tanitra to carry out his instructions.  (Buege Decl., Attachment E, "Discipline Hearing Officer Report," p. 3.)

The DHO concluded that Petitioner had asked "a female to introduce Viagra into the institution, a prescription drug not sold over the counter, and provide this substance to [Petitioner] in the visiting room." (Id.)  The DHO's final report informed Petitioner that "the greater weight of the above listed evidence supports that you committed the prohibited act of attempting to introduce narcotics or medication not prescribed to the individual by medical staff, Code 111A." (Id.)

Having determined that Petitioner was guilty of Code 111A violation, the DHO imposed the following sanctions: 60 days of disciplinary segregation; disallowance of 40 days of good conduct time credit; forfeiture of 27 days of non-vested good conduct time credit; loss of visitation privileges for one year; loss of commissary privileges for 180 days; and a disciplinary transfer. (Id., p. 4.)

Petitioner was advised that he could appeal the outcome of the DHO hearing, and he did so in a proper and timely manner, but without success.  Respondent expressly acknowledges that Petitioner has exhausted his available administrative remedies for his current challenges to the DHO's decision.  "Government Response To Petition For Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2241," [Docket No. 4], p. 10.)  Therefore, Petitioner's habeas corpus claims will be addressed and decided on the merits.

## II. DISCUSSION

18 U.S.C. § 3624(b)(1) allows a federal prisoner to earn up to 54 days per year of credit toward his sentence for good conduct time, ("GCT"). However, the statute also provides that such credits can be forfeited or disallowed, if the prisoner violates prison rules and regulations.

Petitioner claims that he has constitutionally protected liberty interest in his GCT credits, and that the DHO wrongly deprived him of 67 days of his GCT credits without affording him the benefit of due process. He is seeking a writ of habeas corpus that would expunge the DHO's determination that he was guilty of a Code 111A violation, and vacate the sanctions imposed as a result of that determination – including, in particular, the loss of his GCT credits.

Petitioner does indeed have a constitutionally protected liberty interest in his GCT credits, and he cannot be deprived of those credits without being afforded "the minimum requirements of procedural due process appropriate for the circumstances." Wolff v. McDonnell, 418 U.S. 539, 558 (1974). However, it is well-settled that a prisoner facing a loss of GCT credits is not entitled to "the full panoply" of procedural safeguards that attend a criminal prosecution. Id. at 556. In fact, a prisoner who is facing a loss of GCT credits is not even entitled to as much procedural protection as a prisoner, (or former prisoner), who is facing the revocation of his parole or supervised release. Id. at 561-62.

To satisfy the constitutional requirement of due process, a prison disciplinary

action resulting in a loss of GCT credits must satisfy only the very simple and abridged procedural requirements prescribed by Wolff. According to Wolff, a prisoner is entitled to receive only "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Superintendent v. Hill, 472 U.S. 445, 454 (1985). See also Espinoza v. Peterson, 283 F.3d 949, 951-52 (8th Cir.), cert. denied, 537 U.S. 870 (2002); Allen v. Reese, 52 Fed.Appx. 7, 8 (8th Cir. 2002) (unpublished opinion), cert. denied, 540 U.S. 849 (2003).

Due process also requires that a prisoner be given some advance notice of the prison's rules and regulations, which describes the type of conduct that might cause him to lose GCT credits. See Meis v. Gunter, 906 F.2d 364, 367 (8th Cir. 1990) ("obvious problems of due process arise" if "[t]here has been no fair notice of what is prohibited"), cert. denied, 498 U.S. 1028 (1991).

Finally, due process requires that there must be "some evidence" supporting a guilty decision on a disciplinary charge brought against a prisoner. Hill, 472 U.S. at 454. See also Ragan v. Lynch, 113 F.3d 875, 876 (8th Cir. 1997) ("[w]hen inmates are entitled to due process before being disciplined, they must receive: (1) advance written notice of the charges; (2) an opportunity to present evidence in their defense; (3) a written statement by the fact finder of the reasons for the action; and

(4) a decision supported by some evidence in the record"). "Revocation of good time credits is not comparable to a criminal conviction, ... and neither the amount of evidence necessary to support such a conviction, ... nor any other standard greater than some evidence applies in this context." Hill, 472 U.S. at 456.

> The applicable due process standard is satisfied –
>
> "if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced....' United States ex rel. Vajtauer v. Commissioner of Immigration, [273 U.S. 103, 106 (1927)]. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."

Id. at 455-56.

Hill holds that the findings of a prison disciplinary official cannot be overturned in federal court even where the supporting evidence "might be characterized as meager," or wholly circumstantial. Id. at 457. As long as there is at least some evidence of guilt, and the disciplinary action is not wholly arbitrary, the requirements of due process are met.

In this case, the record shows, (and Petitioner does not deny), that he received a handbook describing the rules and regulations governing inmate conduct. (Buege Decl., p. 5, ¶ 15.) The handbook includes a list of prohibited acts, which includes Code 111. Thus, Petitioner was adequately notified, in advance, that he could be found guilty of a prohibited act, of the "greatest" severity level, for

"Introduction of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff." (Buege Decl., Attachment G, p. 11.)

Petitioner does not dispute that (a) he was granted a hearing on the disciplinary charge at issue in this case, and (b) he received a written report that explained the factfinder's, (i.e., the DHO's), conclusions, as well as the evidence on which those conclusions were based. Thus, the only contested issues in this case are (a) whether Petitioner was given adequate notice of the charge against him, and (b) whether the DHO's decision was supported by "some evidence" showing that Petitioner was guilty.

### A. Notice of the Charge

Petitioner contends that he was denied due process, because he was not properly notified of the disciplinary charge against him. The notices that he received were fatally defective, he claims, because they indicated that he was being charged with attempting to introduce "narcotics" into the prison, but the drug described in the notices – Viagra – is not a narcotic.

Petitioner has made a strenuous effort to show that Viagra is not a narcotic, but that is not the issue here. The true issue is whether Petitioner received adequate notice of the rule that he was accused of violating, and the evidence on which the accusation was based. More specifically, did the notice "inform him of the charges and... enable him to marshal the facts and prepare a defense?" Wolff,

418 U.S. at 539. The Court finds that this requirement was satisfied by the Incident Report that Petitioner received. (Buege Decl., Attachment B.)

The Incident Report clearly informed Petitioner of what he was accused of having done. It cited the letter he had written to Tanitra, and it quoted the part of the letter in which he directed her to bring Viagra to him, and give it to him in the visiting room. Petitioner was fully and fairly informed about the specific facts and circumstances giving rise to the disciplinary charge against him, and the evidence on which the charge was based.

The Incident Report also informed Petitioner that he was charged with a Code 111A violation. Petitioner had received a handbook which informed him that Code 111 prohibited the "Introduction of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff." Therefore, when Petitioner was notified that he was accused of a Code 111A violation for attempting to bring Viagra into the prison, he knew, (or certainly should have known), what he was accused of having done. The reference to Code 111A, together with the reference to Viagra, adequately informed Petitioner of the prohibited act that he was accused of committing.

Petitioner contends that the Incident Report, as well as the "Notice Of Discipline Hearing Before The (DHO)," did not adequately inform him of the disciplinary charge against him, because those documents did not quote Code 111 accurately and completely. Instead of quoting all of Code 111, the Incident Report

cited Code 111A and included the phrase "Attempting to introduce narcotics not prescribed to the individual by medical staff."  Similarly, the "Notice Of Discipline Hearing Before The (DHO)" cited Code 111A and included the phrase "Attempting to introduce narcotics not prescribed to the institution [sic] by medical staff."

The Court finds that the reference to Code 111 in both the Incident Report and the "Notice Of Discipline Hearing Before The (DHO)" satisfied the applicable requirements of due process, even though neither of those documents quoted Code 111 in its entirety.  To comply with the applicable requirements of due process, as prescribed by the Supreme Court in Wolff, the notice only had to inform Petitioner of the rule that he was being accused of violating, (as well as the facts giving rise to the accusation).  The mere reference to Code 111, without more, satisfied that requirement. See Whitford v. Boglino, 63 F.3d 527, 534 (7th Cir. 1995) (in order to satisfy the notice requirement prescribed by Wolff, "[t]he notice should include 'the number of the rule violated... and a summary of the facts underlying the charge'"), quoting Adams v. Carlson, 375 F.Supp. 1228, 1237 (E.D.Ill.1974), aff'd in part, rev'd in part on other grounds, 521 F.2d 168 (7th Cir. 1975); see also Outlaw v. Anderson, 29 Fed.Appx. 372, 374 (7th Cir.) (unpublished opinion) (same), cert. denied, 535 U.S. 1102 (2002).

In Holt v. Caspari, 961 F.2d 1370 (8th Cir.), cert. denied, 506 U.S. 865 (1992), the Court of Appeals found that a notice of disciplinary charges satisfied the due process requirements prescribed by Wolff, even though the notice charged the

12

prisoner with "possession of contraband under Rule 24," and he was later found more guilty of the more serious offense of possession of "dangerous contraband under Rule 3." Id. at 1373. The Court explained that –

> "This court has held in Jensen v. Satran, 651 F.2d 605, 607 (8th Cir.1981) (per curiam), that Wolff v. McDonnell does not require the infraction notice to specify whether the offense charged was serious or minor. Here, the charge was possession of the Valium, and while the change from a Rule 24 charge to a Rule 3 charge raised the potential penalties, the factual basis for both was possession of the same Valium at the same time. It is evident that the conduct violation report gave Holt all of the information he needed to make his defense.
> That the Adjustment Board considered the contraband to be sufficiently dangerous to warrant an increased penalty may have been to Holt's detriment, but did not change the factual charge that had been made against him, namely possession of Valium. Any defense he would assert would not differ because of the increase in the penalty. The facts are set forth plainly and clearly, and a constitutional violation has not been charged."

Id. (emphasis added).

Here, as in Holt, the notice at issue met the fundamental due process requirement prescribed by Wolff, because the notice described the nature of the disciplinary charge, as well as the facts and circumstances on which the charge was based, in a manner that allowed for a meaningful response. Simply put, the notice was sufficient to give Petitioner a chance to defend himself. Therefore, the notice satisfied the apposite due process requirement.

### B. Sufficiency of the Evidence

The Court also finds that there was sufficient evidence to support the DHO's determination that Petitioner was guilty of a Code 111A violation. Petitioner claimed

that he was "joking" when he directed Tanitra to bring him Viagra. However, Petitioner offered no evidence to support that defense, and the DHO had the authority to reject it. The DHO obviously found that Petitioner's "joking" defense was simply not credible and while the Court understands the possibility that Petitioner was merely expressing sexual interest in another, rather than planning a wide-spread conspiracy to import Viagra in prison, it is not the role of the Court to second-guess the DHO's assessment of Petitioner's credibility. See Hill, 472 U.S. at 455 (when reviewing prison disciplinary proceedings, federal courts do not make an "independent assessment of the credibility of witnesses"). Instead, the role of this court is to determine if there is at least "some" evidence that supports the decision.

As the DHO noted in his report, the instructions in Petitioner's letter to Tanitra were "very explicit." Petitioner wrote that he wanted her to bring him Viagra, and he wanted her to give him the Viagra in the visiting room. The letter clearly provided at least "some evidence" that Petitioner was planning to introduce a drug into the prison in violation of Code 111. Thus, the minimal standard of proof prescribed by Hill is satisfied.

### III. CONCLUSION

For the reasons discussed above, the Court concludes that Petitioner is not entitled to a writ of habeas corpus in this matter. The Incident Report that he received adequately apprised him of the charge against him, even though it did not fully quote the regulation that he was accused of violating. The Incident Report

identified the regulation at issue as Code 111A, and it fully informed Petitioner of the facts and circumstances on which the charge against him was based. The Incident Report enabled Petitioner to "marshal the facts and prepare a defense," (<u>Wolff</u>, 418 U.S. 564), which is all that was required to satisfy the applicable due process requirements. Furthermore, the record shows that there was "some evidence" – indeed, considerable evidence – supporting the DHO's determination that Petitioner was guilty of a Code 111A violation. Therefore, Petitioner's due process claim must be rejected, and his habeas corpus petition must be denied.

## IV. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, (Docket No. 1), be **DENIED**; and

2. This action be **DISMISSED WITH PREJUDICE**.


Dated: March 18, 2009    s/ *Jeanne J. Graham*
                         JEANNE J. GRAHAM
                         United States Magistrate Judge


## NOTICE

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **April 1, 2009**. A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. A District

15

Judge shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.